FILED

JUL 13 2016

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| ROGER and MARY LEE, | CIV 14-4146 |
| Plaintiffs, | |
| -vs- | MEMORANDUM OPINION AND ORDER ON MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT |
| WILLIAM DRISCOLL, GREG ALBRECHT, WILLIAM ALBRECHT and MATHEWS TOWNSHIP, | |
| Defendants. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Plaintiffs in this section 1983 action are a husband and wife who challenge the actions of their township's board of supervisors on multiple state and constitutional grounds. Currently pending before the Court are Defendants' motions to dismiss and for summary judgment. For the following reasons, the motions will be granted in part and denied in part.

## BACKGROUND

All of the claims in this case arise out of repairs that were made on 219th Street, a township road that crosses Rock Creek near the intersection of 428th Avenue in Mathews Township. Rock Creek runs across a corner of the Lees' property though a natural waterway before it meets 219th Street. In the 1980's a bridge crossing Rock Creek on 219th Street was replaced with an 8-foot culvert. A 3-foot culvert was added in 2010.

Both culverts washed out in the 2011 floods. The Township applied for and was awarded FEMA funds to repair the washout. Meetings were held. There was discussion about installing 9-foot culverts, 8-foot culverts, and of restoring the road to the way it was before with an 8-foot culvert and a 3-foot culvert. The public was excluded from some of the meetings, and one meeting was adjourned. Mary Lee was the elected Township Clerk during this time period. She also was excluded from

meetings when the general public was excluded. The Township eventually chose to install an 8-foot culvert and later a 3-foot culvert. The cost of the entire project was covered by FEMA funds.

Roger and Mary Lee (the Lees) own land next to the roadway where the repairs were made. They agreed to allow the contractor to use dirt and rocks from their property for the construction project because they believed at least one 9-foot culvert would be installed. The Lees contend that the Township unlawfully accepted the federal funds to simply install the same inadequate drainage structure at a lower cost and planned to use the remaining funds for repairs on other roads. The Lees allege that when they raised concerns about this plan, Defendants retaliated against them by withholding information and violating their constitutional rights.

No flooding has occurred on the Lees' land since the repairs were made, so they are not claiming any damages for flooding that has occurred, but they are claiming damages for future flooding that might occur.

In their complaint, the Lees assert the following claims against the defendants Mathews Township and the members of the Township Board of Supervisors (Defendants) for alleged violations of their federal constitutional rights: (1) the right to due process (count 1); (2) the right to equal protection of the laws (count 2); (3) first amendment free speech, retaliation and associational rights (count 3); and (4) taking without just compensation under the Fifth Amendment (count 4). The Lees also assert a taking without just compensation under the South Dakota Constitution (count 5), conversion (count 6), and deceit (count 7). In count 8 of the Complaint, the Lees seek declaratory and injunctive relief to end the alleged violations of their constitutional rights and to prevent future infringement of those rights. They also appear to ask the court to order the Township to provide better drainage at 219th Street.

Defendants assert that the Lees lack Article III standing to pursue their claims for damages that they would incur if flooding occurs in the future. They also argue that the Lees' claims for future

2

damages are not ripe.[1] With respect to count 4 alleging a Fifth Amendment Takings claim, Defendants contend that the Lees failed to seek compensation through available state remedies, and thus that claim is not ripe. Defendants move for dismissal of the Lees' Takings claims and their claim for future flooding damages based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

In addition, Defendants move for summary judgment as to all other counts in the Lees' complaint pursuant to Rule 56(c), arguing that there are no genuine issues of material fact.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). All facts presented to the district court by the non-moving party are accepted as true if properly supported by the record. *See Beck v. Skon*, 253 F.3d 330, 332–33 (8th Cir. 2001).

---

[1]In the Complaint, at the conclusion of counts 1, 2 and 3, the Lees state, in part: Because of the [due process, equal protection and first amendment] violations, Roger and Mary Lee have suffered damages and will continue to suffer damages due to loss of use of their property and 219th Street, future flooding damages and other damages....

(Doc. 1 at ¶¶ 95, 108 and 122.)

3

## DISCUSSION

### I. Ripeness

Before addressing the motion for summary judgment, the Court will address Defendants' argument that the Lees' future damages claim is not ripe and that they lack standing to raise it. The Eighth Circuit has explained a court's duty to determine whether a case is justiciable:

> "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). "The limitations imposed by Article III are usually referred to as the 'case or controversy' requirement." *Schanou v. Lancaster County Sch. Dist. No. 160*, 62 F.3d 1040, 1042 (8th Cir. 1995) (quoting *Arkansas AFL–CIO v. FCC*, 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc)); *see also Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ( "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'"). This court defines "case or controversy" to require "a definite and concrete controversy involving adverse legal interests at every stage in the litigation." *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1210 (8th Cir. 1992). "Federal courts must always satisfy themselves that this requirement has been met before reaching the merits of a case...."

*Gray v. City of Valley Park,* Mo., 567 F.3d 976, 982-83 (8th Cir. 2009). The Eighth Circuit also explained that "[c]ourts employ a number of doctrines to determine judiciability such as standing, ripeness, and mootness." *Id.* at 983.

"Standing and ripeness are sometimes closely related. In assessing ripeness, we focus on whether the case involves 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Missouri Roundtable for Life v. Carnahan*, 676 F.3d 665, 674 (8th Cir. 2012) (quoting *281 Care Committee v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011). One crucial difference between ripeness and standing is that "the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citations omitted). While standing "asks whether these persons are the proper *parties* to bring the suit," ripeness "asks whether this is the correct *time* for

4

the complainant to bring the action." *See Wilderness Soc. v. Alcock*, 83 F.3d 386, 390 (11th Cir. 1996)(emphasis in original).

The issue whether this court has subject matter jurisdiction over the Lees' claim for future flooding damages is one of ripeness rather than standing. For the following reasons, the future damages claim is not ripe for review.

The Eighth Circuit has stated the basic rationale behind the ripeness doctrine "'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Pub. Water Supply Dist. No. 10 v. City of Peculiar, Mo.*, 345 F.3d 570, 572–73 (8th Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). "The ripeness inquiry requires examination of both fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014) (quoting *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000)) (internal quotations omitted). "The fitness prong 'safeguards against judicial review of hypothetical or speculative disagreements.'" *Id.* (quoting *MidAmerican Energy*, 234 F.3d at 1038). The hardship inquiry focuses on "whether delayed review 'inflicts significant practical harm' on the plaintiffs." *Id.* (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)). A claim is unripe "'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* at 875-76 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)) (internal citations omitted). It is sufficient for ripeness purposes, however, that injury is "certainly impending." *Id.* at 876 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)) (internal quotations and citations omitted).

The Lees' damage claim for future flooding is contingent on future possibilities, *i.e.*, that future flooding will occur and that their property will be damaged. The claim is not fit for review at this time. With respect to the hardship prong, no argument is presented that withholding judicial review would "'inflict[ ] serious practical harm' on the plaintiffs." *Parrish*, 761 F.3d at 875 (quoting *Ohio Forestry*, 523 U.S. at 733). The Eighth Circuit has explained, " '[t]he touchstone of a ripeness

5

inquiry is whether the harm asserted has 'matured enough to warrant judicial intervention.'" *Id.* (quoting *Paraquad, Inc. v. St. Louis Hous. Auth.*, 259 F.3d 956, 958 (8th Cir. 2001)). The burden is on the Lees to establish this court's subject matter jurisdiction over their request for relief, and the Lees shoulder the burden to meet each of the two ripeness requirements. The uncertainties attendant with their claim for future damages shows it is not fit for review. Additionally, the Lees have not demonstrated a hardship they would suffer if adjudication is withheld on the issue of possible future damages. Therefore, Defendants' motion to dismiss for lack of subject matter jurisdiction will be granted without prejudice on the Lees' claim for future flooding damages.[2]

## II. The Lees' *Monell* Claim Against Mathews Township

Next, the Court must decide whether the Lees have stated a claim against Mathews Township. The Supreme Court has explained:

> A municipality or other local government may be liable under this section [42 U.S.C. § 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But, under § 1983, local governments are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (citing *Monell*, 436 U.S., at 665–683, 98 S.Ct. 2018). They are not vicariously liable under § 1983 for their employees' actions. *See id.*, at 691, 98 S.Ct. 2018; *Canton*, 489 U.S., at 392, 109 S.Ct. 1197; *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (collecting cases).

*Connick v. Thompson*, 563 U.S. 51, 60 (2011). "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (citing *Monell*, 436 U.S. at 691). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* A plaintiff "must also show that the policy was unconstitutional and that it was 'the moving force' behind the harm that he suffered." *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009).

---

[2]Because this damages issue is not ripe for review, Defendants' motion to exclude Roger Lee's proposed claimed expert testimony regarding those potential future damages will be granted.

6

A municipality may also be liable under § 1983 where the harm was caused by an official unconstitutional custom of the defendant. *See Doe ex rel. Doe v. School Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). "In contrast to the evidence required to establish an official policy, [the Eighth Circuit has] emphasized that a custom can be shown only by adducing evidence of a 'continuing, widespread, persistent pattern of unconstitutional misconduct.' " *Jenkins*, 557 F.3d at 634 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204) (8th Cir. 1999)). "'[L]iability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality as to constitute a "custom or usage" with the force of law,'" and therefore liability "'cannot arise from a single act.'" *Crawford v. Van Buren County*, 678 F.3d 666, 669 (8th Cir. 2012) (quoting *McGautha v. Jackson County, Mo., Collections Dep't*, 36 F.3d 53, 56–57 (8th Cir. 1994)).

Reviewing the record at the summary judgment stage after discovery was completed by the parties, the Court was unable to find evidence from which a jury could reasonably find the existence of a relevant unconstitutional township policy or custom or that such a policy or custom was a moving force behind the Lees' alleged constitutional violations. During oral argument on the summary judgment motion at the pretrial hearing on June 13, 2016, the Court asked the Lees' lawyer what evidence supports the *Monell* claim against Mathews Township. He responded that it is the custom and practice of the township to make decisions without the vote of the board, sometimes without input from all board members, and without input from the public at open meetings. There is evidence to support this allegation in regard to the decision-making for the 219th Street repairs, but evidence is lacking that it is a practice so permanent or widespread as to have the force of law such that Mathews Township is liable for any injuries the Lees may have suffered. The Lees' failure to point to specific evidence in the record that the conduct complained of resulted from an unconstitutional policy or custom requires the Court to grant summary judgment in favor of Mathews Township. The lack of evidence is also fatal to the official-capacity claims against the individual defendants, and summary judgment will be granted in favor of Defendants in their official capacities. *Bankhead v. Knickrehm*, 360 F.3d 839, 844 (8th Cir. 2004) ("Suits against public employees in their official capacity are the legal equivalent of suits against the governmental entity itself.").

## III. Qualified Immunity

Defendants argue that the township supervisors are entitled to qualified immunity. Qualified immunity is a defense against claims in one's individual capacity. *Bankhead*, 360 F.3d at 844. "Qualified immunity shields government officials from liability and the burdens of litigation ... unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013). Thus, determining whether qualified immunity applies involves consideration of two questions: (1) whether the facts alleged constitute a violation of a constitutional or statutory right; and (2) whether that right was "clearly established" at the time of the alleged violation. *LaCross v. City of Duluth*, 713 F .3d 1155, 1157–58 (8th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

### A. The Lees' Due Process Claims (Count 1)

The Court first takes up Defendants' claims that they are entitled to qualified immunity on the Lees' Due Process claims. The Fourteenth Amendment states: "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause encompasses two distinct forms of protection: (1) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (2) substantive due process, which guarantees that a state cannot deprive a person of a protected interest arbitrarily and oppressively in a manner that "shocks the conscience." *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–47 (1998). Under either form of protection, a person must have a protected interest in either life, liberty, or property. The Eighth Circuit has explained:

> The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law...." This clause has two components: the procedural due process and the substantive due process components. "Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated," and "[t]he possession of a protected life, liberty, or property interest is ... a condition precedent" to any due process claim. "[W]here no such interest exists, there can be no due process violation." Merely labeling a governmental action as arbitrary and

8

> capricious, in the absence of the deprivation of life, liberty, or property, will not
> support a substantive due process claim.

*Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999). Therefore, to assert a procedural due process claim, a plaintiff must initially demonstrate that she was deprived of some "life, liberty, or property interest" arising under state law and, if successful, the plaintiff must then establish that she was deprived of that property interest without sufficient process. *Krentz v. Robertson*, 228 F.3d 897, 903 (8th Cir. 2000). The property right at issue in a procedural due process claim must have been created by an independent source such as state law rather than by the Constitution. *Keating v. Nebraska Public Power Dist.*, 660 F.3d 1014, 1017 (8th Cir. 2011). Although the property right must derive from state law, the amount of process due is judged by reference to the federal Constitution rather than by any reference to state law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541(1985). In other words, the Lees must prove a protected property right by reference to state law, but the amount of process that they must be accorded is judged by federal law rather than state law.

The Lees assert that they have a property interest in adequate drainage of their land, and that they had a right to attend all of the meetings where the methods of repairing the culvert on 219th Street were discussed. Here is how they explain this argument in their brief in opposition to Defendants' motion for summary judgment:

> The property and liberty interests at stake here are based on the right to be
> free from government occupation of their property by water during periodic flood
> events because of the township's interference with the natural watercourse of Rock
> Creek. Contrary to the assertions of Defendants, the issue is not whether the township
> has discretion to choose how to repair or maintain the road. The actions of the
> Defendants ignored statutory duties to maintain at least the minimum standards of
> roadway drainage by providing a ten-year rainfall event capacity for Rock Creek, and
> ignoring request and attempts by Roger Lee to find solutions to the funding or other
> problems prevention improvement of the inadequate drainage. These interests
> implicate due process rights.

(Doc. 35 at 18.) The Lees' argument alleges two separate constitutional interests: (1) a property interest in adequate drainage of their land, and (2) the right to attend and speak at all township meetings regarding the 219th Street repairs.

In support of the Lees' argument that their alleged property interest in adequate drainage derives from an independent source such as state law, the Lees cite to language in *Knodel v. Kassel Township*, 581 N.W.2d 504, 509-10 (S.D. 1998), which states, "Easements, including an upper owner's drainage rights, are property within the purview of the constitutional provision that no person shall be deprived of their property without due process." *Knodel*, however, is distinguishable. It is a water law case discussing the rights of owners of dominant land versus the rights of owners of servient land. The South Dakota Supreme Court described how the state follows the "civil law" rule,

> which burdens lower agricultural property ... with an easement under which the dominant, or upper property owner may [reasonably] discharge surface water over the servient estate through natural watercourses.[T]he rule allows discharge of surface waters over and not on the land of another. A lower property owner cannot interfere with the natural flow of surface water to the detriment of an upper property owner. We know of no exception that inverts this easement to favor lower landholders, save that the civil law doctrine is qualified inasmuch as it is impermissible for a dominant landowner to collect surface waters, and then cast them upon the servient estate in unusual or unnatural quantities. Actionable injury may occur if increases in volume or rate cause flooding or erosion.

*Id.* at 507-08. The Knodels owned the servient land and they plugged a culvert that obstructed the course of natural drainage and flooded the dominant land. The township intended to unplug the culvert and the Knodels asked the court to enjoin such action. The court refused an injunction, noting that the Knodels sought to deprive another landowner of a superior right, *i.e.*, the upper owner's drainage rights. *See id.* at 509-510. The upper owner was not even a party to the lawsuit in *Knodel*, and the language that the upper owner's drainage rights are entitled to due process protection is dicta.

Even assuming that *Knodel* gives the Lees a property interest in adequate drainage of their land, the Lees actually are asserting a much broader constitutional right than that of adequate drainage; namely, they argue that encompassed within the Due Process Clause's protection of their right to adequate drainage is their right to have a nearby road repaired by the township in a way that they deem appropriate to ensure adequate drainage of their land in the event of a ten-year flood. This

Court is unaware of any court that has granted a property owner a fundamental right to a certain road repair. In fact, South Dakota law establishes that the board of supervisors has the discretion to decide how a road should be repaired. *See Willoughby v. Grim*, 581 N.W.2d 165, 168-169 (S.D. 1998) ("No standards for township road repair and maintenance exist in our laws. Details for repairing and maintaining secondary roads, therefore, remain within the conscientious discretion of the board of supervisors."). There might be a case where a governmental entity repaired a road in such a way that property interests are implicated, but this is not such a case.

The Lees have cited no authority for the proposition that they, as adjacent property owners, had a fundamental constitutional right to attend the township meetings regarding the 219th Street repairs.[3] Defendants argue and the Lees do not dispute that violations of open meeting laws are a matter of state law and do not rise to the level of constitutional violations. *See Chesterfield Development Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104-1105 (8th Cir. 1992) (a "bad-faith violation of state law remains only a violation of state law" and should "not automatically give rise to a violation of rights secured by the Constitution") (quotation omitted).

Because the Lees have not shown a clearly established constitutional right to certain road repairs for drainage of their land or to attend meetings, summary judgment should be granted in favor of Defendants on the issue of qualified immunity for the procedural due process claim.

The Lees further argue that the Defendants failure to explore other solutions for better drainage and their exclusion of the Lees from township board meetings shock the conscience and violate substantive due process. To breach the shield of qualified immunity by establishing a "violation of substantive due process rights by an...official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the ... official was shocking to the 'contemporary conscience.'" *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)). To violate

---

[3]The Court will analyze the Lees' First Amendment interests separately; those are the stronger interests at issue in this case.

11

substantive due process, state action must be "truly irrational," that is, it must be more than "arbitrary, capricious, or in violation of state law." *Young v. City of St. Charles*, 244 F.3d 623, 628 (8th Cir. 2001). In *Chesterfield*, the city enacted a zoning plan and ordinance without following the proper state law procedures for doing so, but the city was not aware of the resulting invalidity. *See id.* at 1103. The city enforced the plan and ordinance against a developer, refusing to rezone property which the developer had purchased. *Id.* The developer sued under § 1983, claiming that the city's enforcement of the invalid plan and ordinance deprived it of property without due process. *Id.* The developer claimed that its property was not subject to the invalid ordinance and plan and that the city had no right to restrict the developer's use of the property. The Eighth Circuit squarely rejected the developer's argument that the absence of law-resulting from the invalidity of the plan and ordinance-turned application of that plan and ordinance into a substantive due process violation. *Id.* The Eighth Circuit stated, "Our decision would be the same even if the City had knowingly enforced the invalid zoning ordinance in bad faith and had no claim that [alternative] zoning applied to the property." *Id.* at 1104. The *Chesterfield* court rejected the developer's argument that the city's enforcement of an invalid ordinance is a "truly irrational" government action which gives rise to a substantive due process violation. *Id.*

Like the developer in *Chesterfield*, the Lees have failed to establish that the Defendants' behavior crosses the threshold of a conscience-shocking constitutional violation. The decision to replace the washout with an 8-foot and a 3-foot culvert was reasonable. FEMA would not have paid for just one 9-foot culvert and FEMA would not have paid for two 9-foot culverts. The entire cost of the 8-foot and 3-foot culvert project was paid with federal funds. Even if the wisdom of the final decision on the road repair is debatable, more than a mere difference of opinion is required to establish a substantive due process violation. The Lees' claims do not amount to a violation of substantive due process, and Defendants are entitled to qualified immunity. Summary judgment in favor of Defendants is therefore appropriate on count 1.

12

B. The Lees' Equal Protection Claim (Count 2)

The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. This provision of the Constitution does not require all persons be treated alike, but is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Under this standard, courts must strictly scrutinize a state government's decision to treat people differently on account of a protected status, such as race or sex. *Id.* at 440-41. In this case, however, the Equal Protection Clause requires only that a classification bear a rational relationship to a legitimate end because it does not involve a suspect class or a fundamental right. *See id.* at 441-42.

The Supreme Court has recognized "equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To be similarly situated, individuals must be similar in all material respects. *See Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) ("To be considered 'similarly situated,' comparators must be 'prima facie identical in all relevant respects.'") (citations omitted); *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (class-of-one claims require "an extremely high degree of similarity between [the plaintiff] and the persons to whom [she] compare[s herself]").

Here, the Lees have not identified the "similarly situated" individuals, nor have they referred to any facts in the record showing how they were treated differently from others similarly situated and that there was no rational basis for the difference in treatment. As for the meetings, the township board of supervisors excluded everyone, not just the Lees.[4] Regarding the road repair, the Lees do not allege that the supervisors handled other, similar road repair projects differently, and they argue that the supervisors commonly misused FEMA funds. Although the township supervisors might

---

[4]The Court next will address this issue in regard to the Lees' stronger First Amendment claims.

13

reasonably have chosen to spend more money for bigger culverts, they were entitled to chose the 8-foot and 3-foot culverts, and that decision is not unreasonable. For these reasons, summary judgment is warranted on the equal protection claim.

## C. The Lees' First Amendment Claims (Count 3)

In count 3, the Lees allege that "[t]hroughout the process of addressing the culvert changes and decision on use of federal funds, both Roger and Mary Lee sought to speak freely on public issues and to 'petition' or address public concerns with the Township Board, and to associate with like-minded residents of Mathews Township." (Doc. 1 at p. 18, ¶ 111.) The Lees contend that by excluding them from the process of addressing the culvert changes and the decisions on the use of FEMA funds, Defendants violated their rights to free speech, freedom of association and freedom to petition. Furthermore, the Lees allege that Defendants retaliated against Mary Lee by restricting access to information and records and by holding meetings without her, thus interfering with her duties as Township Board Clerk. (*Id*. at ¶¶ 113, 114.) Finally, according to the Lees, Defendants retaliated against them by holding meetings without notice and public input in order to chill their expression of speech. (*Id*. at ¶¶ 117-119.)

### 1. Free Speech Claim

In pertinent part, the First Amendment to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech ... or the right of the people to peaceably assemble...." U.S. Const. amend. I. The Supreme Court has repeatedly emphasized "the central importance of protecting speech on public issues." *Boos v. Barry*, 485 U.S. 312, 318 (1988) (citing cases).

As stated earlier, a violation of state open meeting laws does not rise to the level of a constitutional violation, and the Lees cite no authority granting the public a constitutional right to attend and speak at township meetings. The Supreme Court and Eighth Circuit have recognized a limited First Amendment right to access particular judicial proceedings and documents. *See Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 10 (1986) (finding a First Amendment right to

14

access certain pre-trial criminal proceedings); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579–81 (1980) (finding a First Amendment right to access criminal trials); *In re Search Warrant*, 855 F.2d 569, 573 (8th Cir. 1988) (finding that "the first amendment right of public access does extend to the documents filed in support of search warrant applications"); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983) (finding that "the First Amendment extends to proceedings for contempt, a hybrid containing both civil and criminal characteristics"). These cases do not, however, support the Lee's Free Speech claim because the Lees did not seek access to judicial proceedings or documents. And the Court is not aware of any cases where the Eighth Circuit or the Supreme Court have had occasion to consider under what conditions, if at all, a constitutional right of access attaches to township board meetings like those at issue here. The closest case this Court found to recognizing a First Amendment right to attend and speak at a board meeting is *Green v. Nocciero*, 676 F.3d 748 (8th Cir. 2012). In that case, the Director of Security for a school system told police that a member of the audience at a school board meeting was "disruptive and refused to leave." *Id.* at 753. The audience member, Green, denied being disruptive, but when the police arrived he "refused their request" to leave and was arrested based on refusing this order of the police. *Id.* Because the arrest was based on Green's refusal to obey the police order, the Eighth Circuit affirmed the dismissal of his First Amendment retaliation claim, finding the "sequence fails to show a sufficient causal connection between the actions" of the Director of Security and "Green's subsequent arrest and prosecution." *Id.*

Although Green's claim was that of retaliation for exercising his First Amendment rights, the Eighth Circuit suggested that Green could have stated a First Amendment right of public access to the school board meeting, had he chosen to do so. *Id.* at 753-54 ("having chosen to conduct its business in public and to hear citizen views, the Board could not deny access to the meeting" or "discriminate against a speaker based on his viewpoint," but since the meeting was a limited public forum, the Board "could reasonably restrict public access to this forum based on ... the practical need to restrict access for reasons of manageability," which "necessarily included the authority to remove an unruly or disruptive member of the audience" (internal quotation marks omitted)). The Eighth Circuit said that because the meeting was a public forum, Green "had a right to remain at the meeting

15

if he did nothing wrong and could not be removed if School Board officials did not want him there 'because of his likeliness to speak out again on a matter that would embarrass the board majority.'" *Id.* at 754. The Eighth Circuit in *Green* implied that one might have a right to attend and speak at board meetings held in public. In contrast to the school board in *Green*, however, the Mathews Township board of supervisors chose not to conduct its business in public or to hear citizen views in a public forum.[5]

With all of this in mind, the Court declines to hold that a federal constitutional right to access applies to the township board meetings that were not held in public even though admittedly in violation of state open meeting law. Accordingly, the Defendants are entitled to summary judgment on Roger and Mary Lee's First Amendment Free Speech claims based on qualified immunity. Even if this was the violation of a federal constitutional right, that law was surely not established law that would put the Defendants on notice of their violation of federal constitutional law.

### 2. Retaliation Claim

It is well-settled that "as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citation and quotation omitted); *see Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007) (quoting *Hartman*, 547 U.S. at 256) To prevail in an action for First Amendment retaliation, "plaintiff must show a causal connection between a defendant's retaliatory animus and [plaintiff's] subsequent injury ..." *Id.* at 259. "Retaliation need not have been the sole motive, but it must have been a 'substantial factor' in" the decision. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 613 (8th Cir. 2006)).

Upon review of the record in this case, the Court concludes that genuine issues of material fact preclude summary judgment on the Lees' First Amendment retaliation claim. It is clear that the

---

[5]At the hearing on June 13, the Court was advised that a violation of the state's open meeting laws was found and a public reprimand was issued.

16

Lees engaged in First Amendment-protected activity when they publicly criticized the township board's decision-making and handling of FEMA funds, and when Mary Lee filed a complaint for violation of the state's open meeting laws. William Driscoll even testified that Roger Lee's criticism of the road repair "may have had a little something" to do with the exclusion of Mary Lee from one of the meetings. (Doc. 36-5, Depo. of William Driscoll at p. 42.)  Genuine issues of material fact exist regarding Defendants' motives and reasons for excluding the Lees from meetings, and Defendants' are not entitled to qualified immunity on the Lees' First Amendment retaliation claim.

### 3. Mary Lee's Freedom of Association Claim

The Eighth Circuit has noted that limitations on an elected official's participation in the proceedings of a public body such as the township board in this case may affect the official's First Amendment associational rights. "Restrictions on an elected official's ability to perform her duties implicate the interest of two distinct parties: the individual's First Amendment associational rights * * * and the voters' rights to be meaningfully represented by their elected officials." *Peeper v. Callaway Count Ambulance Dist.*, 122 F.3d 619, 623 (8th Cir. 1997).

The plaintiff in *Peeper* was a newly-elected member of an ambulance board of directors, whose husband was an emergency medical technician, and a supervisor of the ambulance district, over whom the board had oversight responsibilities. In view of what the board perceived as a conflict of interest, the other board members passed a resolution that limited the plaintiff's participation, as a member of the board, on a wide variety of topics. The District Court denied the plaintiff's claim, viewing the resolution as "content-neutral," and "narrowly tailored to meet the significant government interests of preventing the appearance of government corruption and promoting the effective functioning of the District," while leaving "open alternative channels of communication for the [plaintiff]." *Id.* at 622. The Eighth Circuit disagreed, but only as to the breadth of the limitations imposed by the resolution, while recognizing that "[l]egitimate state interests may warrant restrictions that are de minimis limitations of the officials participation." *Id.* at 623 (citing *Clements v. Fashing*, 457 U.S. 957, 972-73 (1981)). The Court ultimately concluded that, "[b]ecause provisions of the May resolution infringe upon Peeper's constitutional rights under the First and

17

Fourteenth Amendments without being rationally related to a legitimate state interest, the May resolution cannot stand as written." *Id.* at 624.

*Peeper* stands for the proposition that by limiting Mary Lee's powers and duties as the elected Township Board Clerk, Defendants' might have infringed her First Amendment associational rights. Questions of fact remain regarding whether the limitations were rationally related to a legitimate state interest. Thus, Defendants are not entitled to summary judgment on Mary Lee's Freedom of Association claim.[6]

### 4. The Lees' Right to Petition

The United States Supreme Court reaffirmed the well established First Amendment right of a private citizen to "petition" the government for redress of grievances in *McDonald v. Smith*, 472 U.S. 479, 482–83 (1985) ("James Madison made clear in the congressional debate on the proposed amendment that people 'may communicate their will' through direct petitions to the legislature and government officials."). "The right to petition means more than simply the right to communicate directly with the government. It necessarily includes those activities reasonably and normally attendant to effective petitioning." *In re IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300, 1310 (8th Cir. 1985), *on reh'g*, 797 F.2d 632 (8th Cir. 1986). The Lees have alleged facts which, if true, could support a finding that Defendants prevented them from communicating their grievances about the road repairs on 219th Street, a topic of public concern. Therefore, Defendants are not entitled to qualified immunity on the right to petition claim, and their motion for summary judgment will be denied as to this First Amendment claim.

---

[6]The Eighth Circuit in *Peeper* also stated that treating a board member differently from other board members strongly implicates Fourteenth Amendment equal protection rights. *See* 122 F.3d at 623. The facts of this case differ from *Peeper* in ways that do not implicate Mary Lee's equal protection rights. Although Mary Lee was an elected township clerk, she had only clerical duties and was not a board member. More importantly, the Lees have presented evidence that a board member, Gale Larson, was treated similarly by also being excluded from meetings. In addition, Mr. Larson was denied input into and voting on decisions that were made regarding the 219th Street road repairs. (Doc. 36-1, Affidavit of Gale Larson.) Mary Lee's failure to identify "similarly situated" individuals who were treated differently is fatal to an equal protection claim based on the First Amendment.

D. The Lees' Taking Without Just Compensation Claims (Counts 4 and 5)

In count 4 of the Complaint, the Lees assert that they donated fill dirt for the 219th Street road repair based on their understanding that the dirt would be used to place two 9-foot culverts, as was discussed by the board of supervisors in a meeting in July of 2012. The Lees contend that "the taking of borrow fill for a project different from and providing less protection from flooding damage than anticipated and agreed by Lees constitutes a taking of private property for public use without compensation." (Doc. 1 at p. 21, ¶ 131.) Count 5 alleges a taking in violation of state law.

The Fifth Amendment to the United States Constitution forbids the federal government from taking private property "without just compensation." In 1897, the Supreme Court ruled that the Fourteenth Amendment's due process clause imposes the same restriction on state and local governments. *See Chicago, Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 241 (1897). Thus, a taking of property without just compensation by a state or local government is a Fifth and Fourteenth Amendment violation, and therefore actionable under 42 U.S.C. § 1983. Such a claim, however, "is premature until it is clear that the Government has both taken property and denied just compensation." *Horne v. Dep't of Agric.*, 133 S. Ct. 2053, 2062 (2013) (emphasis in original). This is sometimes known as the "*Williamson* requirement" because it originated with *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186–87 (1985).

The requirement that a Fifth Amendment claimant establish not just a taking, but the denial of just compensation, means that the claimant must first seek compensation through state procedures, should such procedures exist. *Williamson*, 473 U.S. at 194 n. 13 ("The nature of the constitutional right ... requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action."). As explained by the Eighth Circuit, there must be a final decision with respect to the property at issue and the aggrieved party must seek compensation before the federal court can assert jurisdiction. *Dahlen v. Shelter House*, 598 F.3d 1007, 1010 (8th Cir. 2010); *see also*, *Williamson*, 473 U.S. at 196 ("[I]f a State provides an adequate procedure for seeking just

19

compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.").

There is no dispute that a state inverse condemnation action is or was available to the Lees in state circuit court. *See Rupert v. City of Rapid City*, 827 N.W.2d 55, 70-71 (S.D. 2013) ("Our Constitution allows a property owner to file suit to secure 'just compensation' for a taking or damaging of his or her property if the public entity does not institute formal proceedings to take or damage the property."). Defendants claim-and the Lees do not dispute-that the Lees have not pursued, *i.e.* exhausted, available state remedies for just compensation. The Lees argue, however, that the holding of *Williamson* is prudential rather than jurisdictional, and thus this Court has discretion to decide the takings issue now. This argument was squarely rejected by the Eighth Circuit in *Snaza v. City of Saint Paul*, 548 F.3d 1178, 1181 (8th Cir. 2008) (rejecting plaintiff's argument that interests of efficiency or justice may favor addressing a takings claim before state remedies have been exhausted because "we have held that *Williamson County* is jurisdictional").

The Lees rely on *Horne v. Dep't of Agriculture*, ---U.S. ---, 133 S.Ct. 2053 (2013), to argue that their claims are ripe even though they did not seek just compensation under South Dakota law. *Horne*, however, is distinguishable. The Court there determined that the plaintiffs had no "reasonable, certain, and adequate" means of obtaining just compensation. That is not the case here.

Failure to satisfy the requirement of seeking just compensation under South Dakota law means that the Fifth Amendment Takings claim is not ripe for review, and this Court lacks jurisdiction to entertain the claim. Therefore, Defendants' request to dismiss count 4, the federal Takings claim, will be granted without prejudice. The state Takings claim alleged in count 5 of the Complaint also will be dismissed without prejudice.

20

## IV. State Law Tort Claims

### A. Conversion (Count 6)

Count 6 charges Defendants with converting the Lees' fill dirt. "Conversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right." *Chem-Age Indus., Inc. v. Glover*, 652 N.W.2d 756, 766 (S.D. 2002) (citation omitted). It is undisputed that the Lees authorized the use of their fill dirt and that they did not place any conditions on its use. Roger Lee's deposition testimony contradicts a finding of unauthorized control:

Q. I'm going to stop you for a second.

A. (By Roger Lee) Okay.

Q. You've described for me where you told the contractor to park his equipment?

A. Um-huh.

Q. Did he park it there?

A. Yes, he did.

Q. You told him where to get the dirt from. Did he take it from where you told him?

A. He did.

(Doc. 25-1, Deposition of Roger Lee at p. 50.) Because the Lees have failed to establish that Defendants exercised unauthorized control over their fill dirt, Defendants are entitled to summary judgment on the conversion claim in count 6 of the Complaint.

### B. Deceit (Count 7)

The Lees allege that Defendants misrepresented and concealed the facts about their decisions and actions in replacing the culverts on 219th Street, and that the Lees relied on those misrepresentations when they donated fill dirt for the project and refrained from taking action to require Defendants to build the project initially approved by FEMA. (Doc. 1 at p. 24, §§ 154, 155.)

Under South Dakota law, "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL § 20-10-1. Deceit is defined in SDCL § 20-10-2 as:

21

A deceit within the meaning of § 20-10-1 is either:

(1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

(2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

(3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

(4) A promise made without any intention of performing.

Defendants urge this Court to grant summary judgment on the deceit claim because both Roger and Mary Lee testified that they did not believe Defendants told them they would put in a 9-foot culvert simply in order to get free dirt from the Lees for the project. (Doc. 27 at p. 33-34.) Thus, according to Defendants, there is no showing of the necessary element of intent to deceive. *See, e.g., Ducheneaux v. Miller*, 488 N.W.2d 902, 914-15 (S.D. 1992) ("Intentional misrepresentation is defined by SDCL 20–10–1 as a wilful deception made with the intention of inducing a person 'to alter his position to his injury or risk.'").

"Questions of fraud and deceit are generally questions of fact and as such they are to be determined by a jury; furthermore, whether a party relied on the alleged fraud to its detriment is a fact question for the jury." *Paint Brush Corp., Parts Brush Div. v. Neu*, 599 N.W.2d 384, 392 (S.D. 1999) (quoting *Dede v. Rushmore Nat. Life Ins. Co.*, 470 N.W.2d 256, 259 (S.D. 1991)).

Gale Larson attested that he and board member William Albrecht knew that Roger Lee wanted at least one 9-foot culvert, and it ultimately was agreed at the July public meeting of the township board that one 9-foot culvert would be installed. (Doc. 36-1, Affidavit of Gale Larson at ¶ 5.) It was at this meeting that the Lees indicated they would provide the fill dirt. After the July meeting no additional public meetings were held prior to completion of the project. (*Id.* at ¶ 6.) Bill Albrecht, Bill Driscoll and Todd Albrecht made the decision to put in the 8-foot culvert without informing anyone else. (*Id.* at ¶ 7.) The Lees found out that the culvert was 8-foot rather than 9-foot

22

when Roger measured it after installation. In addition, no public meetings were held when it was decided to add a 3-foot culvert. (*Id.* at ¶ 9.) Here, a jury could determine that Defendants intentionally made misrepresentations to the Lees, or suppressed facts they should have disclosed, and that the Lees relied to their detriment by donating fill dirt. Thus a genuine issue of material fact exists which precludes summary judgment on the deceit claim in count 7 of the Complaint.

## V.     The Lees' Claims for Declaratory Judgment and Injunctive Relief (Count 8)

In count 8, the Lees request protection from further infringement of constitutional rights, and injunctive relief to "establish the lawfulness of Mathew Township's failure to provide adequate drainage at 219th Street," and for "corrective action." (Doc. 1 at p. 25, ¶¶ 159, 160.)   At the June 13 hearing, the Lees' lawyer clarified that the injunctive relief they are requesting is to require the Township to bring the road up to minimum standards, and to discontinue violating the Lees' constitutional rights.

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992). A plaintiff "must show that she is likely to suffer some future injury to obtain injunctive relief." *Meagley v. City of Little Rock*, 639 F.3d 384, 391 (8th Cir. 2011).

The allegations of the Lees' Complaint relate to past conduct of Defendants that occurred when decisions were made to repair 219th Street with an 8-foot and a 3-foot culvert. The Lees are not currently subjected to the allegedly unconstitutional activity about which they complain. Thus, the Lees' claims for injunctive relief will be dismissed for lack of an Article III case-or-controversy.

The Court pointed out at the June 13 hearing that asking the Court to declare the road repairs unlawful and to compel Defendants to correct the repairs is in the nature of mandamus rather than declaratory relief. The remedy of mandamus is a drastic one, to be invoked only in extraordinary

23

situations. *See Will v. United States*, 389 U.S. 90, 106 (1967). The writ "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " *Id.* at 95 (quoting *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26 (1943)). The Court is not aware of any authority to grant the Lees' request for an order requiring the Township to make road repairs, and this claim for injunctive relief also will be dismissed. Accordingly,

IT IS ORDERED:

1.      That Plaintiffs' claim for future flooding damages is dismissed without prejudice;

2.      That Defendants' motion to exclude the expert testimony of Roger Lee, doc. 23, is granted;

3.      That Defendants' motion for summary judgment is granted in favor of Mathews Township and the individual defendants in their official capacities as to all claims;

4.      That Defendants' motion for summary judgment is granted in favor of Defendants in their individual capacities for the following claims: 1) Due Process; 2) Equal Protection; 3) First Amendment Free Speech; and 4) conversion;

5.      That Defendants' motion for summary judgment is denied as to the following claims against the defendants in their individual capacities: 1) Plaintiff Roger and Mary Lee's First Amendment retaliation claims; 2) Plaintiff Mary Lee's First Amendment association claim; 3) Plaintiffs' First Amendment petition claim; and 4) Plaintiffs' deceit claim;

6.      That Plaintiffs' federal and state Takings Clause claims are dismissed;

7.      That Plaintiffs' claims for a declaratory judgment and injunctive relief are dismissed.

Dated this **13** day of July, 2016.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
    (SEAL)        DEPUTY

24